No. 23-90001

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

3M COMPANY,

*Defendant-Petitioner*,

v.

CHRISTOPHER AABY, MUHAMMAD AADAM, et al.,

*Plaintiffs-Respondents.*

On Certified Order from the United States District Court
for the Northern District of Florida
Case No. 3:19-md-2885
The Honorable M. Casey Rodgers

## PLAINTIFFS-RESPONDENTS' RESPONSE TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(B)

Michael A. Sacchet
  *Counsel of Record*
Megan L. Odom
CIRESI CONLIN LLP
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
(612) 361-8220

*Counsel for Plaintiffs-Respondents*

January 12, 2023

Appeal No. 23-90001

*3M Co. v. Aaby, et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The list of interested persons is very voluminous. Plaintiffs-Respondents Christopher Aaby and Muhammad Aadam, et al., have therefore separately filed their Certificate of Interested Persons. Pursuant to Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Plaintiffs-Respondents hereby certify that the accompanying list is a complete list of interested persons omitted from or incorrectly included in the initial Certificate of Interested Persons filed by Defendant-Petitioner 3M Company on January 3, 2023.

Plaintiffs-Respondents state they are individuals and not corporate entities.

Dated: January 12, 2023          Respectfully submitted,

*/s/ Michael A. Sacchet*
Michael A. Sacchet
Megan L. Odom
CIRESI CONLIN LLP
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
mas@ciresiconlin.com
mlo@ciresiconlin.com
(612) 361-8220

*Counsel for Plaintiffs-Respondents*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ................................................................... CIP-1

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................... 1

BACKGROUND ..................................................................................... 5

ARGUMENT ......................................................................................... 11

I.    There is no question the MDL court properly invoked its inherent powers
    without first exhausting estoppel or other state-law doctrines ........................ 12

II.   There is no question the MDL court correctly sanctioned 3M in all cases
    without certifying a Rule 23 class .................................................................. 13

III.  There is no question the MDL court provided 3M ample due process and
    applied the correct standard in finding bad faith. ........................................... 15

CONCLUSION ...................................................................................... 17

CERTIFICATE OF COMPLIANCE ........................................................... 19

CERTIFICATE OF SERVICE .................................................................. 20

i

# TABLE OF AUTHORITIES[*]

**Cases**

*Baker v. Alderman*,
    158 F.3d 516 (11th Cir. 1998) .............................................................16

*Burrell v. Bd. of Trs. of Ga. Mil. Coll.*,
    970 F.2d 785 (11th Cir. 1992) .............................................................16

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ................................................................... 12, 13

*Grant v. Regal Auto. Grp., Inc.*,
    2020 WL 8224608 (M.D. Fla. Aug. 3, 2020) ............................... 12, 16

*In re Chevron U.S.A., Inc.*,
    109 F.3d 1016 (5th Cir. 1997) .............................................................14

*In re Mroz*,
    65 F.3d 1567 (11th Cir. 1995) .................................................... 13, 16

*In re Sunshine Jr. Stores, Inc.*,
    456 F.3d 1291 (11th Cir. 2006) .................................................. 16, 17

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2014) .................................................. 12, 16

*Purchasing Power, LLC v. Bluestem Brands, Inc.*,
    851 F.3d 1218 (11th Cir. 2017) .................................................. 13, 17

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996) .............................................................................11

*Zeltser v. Little Rest Twelve, Inc.*,
    662 F. App'x 887 (11th Cir. 2016) .....................................................17

---

[*] Asterisks indicate authorities upon which Plaintiffs-Respondents primarily rely.

**Statutes**

*28 U.S.C. § 1407 ........................................................... 5, 6, 13, 14

**Rules**

Fed. R. Civ. P. 23 ............................................................. 13, 14

N.D. Fla. L.R. 7.1(F) ...........................................................9

N.D. Fla. L.R. 7.1(K) .........................................................9, 16

**Other Authorities**

Tennessee Williams, *Cat on a Hot Tin Roof* (1955) ..................................................2

16 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3929 (3d ed.) ............................11

## INTRODUCTION

Four years ago, the JPML assigned the district court a monumental task: to oversee the largest mass tort in American history. Upholding its statutory mandate, the MDL court labored day in and day out to manage global discovery, motion practice, bellwether trials, remand cases, and everything in between. Despite the court's herculean efforts to sagaciously steer the parties through these complex proceedings, 3M upended the MDL by brazenly manipulating the federal judiciary.

After holding itself out as the sole target of Plaintiffs' claims, warping the government-contractor defense to shelter itself after defrauding the military, losing trial after trial until it was saddled with over $300 million in verdicts, and orchestrating a sham bankruptcy based on a fabricated indemnity agreement, 3M could no longer run from over 250,000 disabled veterans waiting in line for trial. When its thinly-veiled bankruptcy scheme backfired, 3M stooped to the unthinkable. Staring down the barrel at waves of remand trials, 3M claimed for the very first time that it was the wrong party. Suddenly its subsidiary Aearo, supposedly bankrupt, was to blame. But 3M was past the point of no return. 3M's repeated representations and continuing conduct in the MDL had cemented itself as the one and only culprit.

Blindsided by 3M's about-face, the court had no choice but to sanction 3M for its bad faith, holding the company to its express statements by striking its newly-minted wrong-party defenses. Far from "unprecedented," Pet. at 1, the sanctions

order is nothing more than a routine exercise of a federal court's inherent power to manage its own affairs. Although it is beyond peradventure that the MDL court did not abuse its discretion in sanctioning 3M, this Court should grant interlocutory review because 3M's abuse of the judicial process has prejudiced all Plaintiffs.

Even before 3M radically reversed course, the "odor of [its] mendacity" was suffocating.[1] Plaintiffs smelled it. The MDL court smelled it. Other courts smelled it. And jury after jury smelled it. Everyone—except 3M, of course—smelled it. 3M's cynical ploy to blame a defunct and purportedly bankrupt entity as the only liable party—after more than three years of proclaiming the polar opposite—was "just the latest in a series" of misconduct that is "without precedent or merit." *Cf.* Pet. at 1.

At an early bellwether trial, 3M "willfully" violated the court's rulings not once, not twice, but "three times," only to blithely reject "unambiguous and repeated directives" to cure its misconduct, leaving the MDL court with "no other option" than to fine 3M's counsel $12,000. *Baker v. 3M*, No. 7:20-cv-39, Dkt. 187 at 3, 5-8 (N.D. Fla. June 22, 2021). Unfazed by money, 3M flouted the same order without apology before another jury months later. Dkt. 2244 at 1-2. This was "not the first time, or even the second, that [3M] ha[d] disregarded the Court's rulings" in defending the defective earplug that it shilled to the military for 15 years. *See id.* at

---

[1] Big Daddy said it best, "There ain't nothin' more powerful than the odor of mendacity. You can smell it. It smells like death." Tennessee Williams, *Cat on a Hot Tin Roof*, Act III (1955).

2. Evidentiary sanctions applicable to all future bellwether trials were necessary to rectify 3M's "brazen and repeated attempts" to prejudice the jury. *Id.* at 1.

Somehow, 3M remained undeterred. At a recent bellwether trial, before a new judge, 3M disobeyed pretrial orders with abandon. "[N]ever, never, not in over 300 trials" had the Northern District of Florida's Chief Judge "ever observed [that] kind of shenanigans." *Wilkerson v. 3M*, No. 7:20-cv-35, Dkt. 206 at 2260:6-10 (N.D. Fla. Mar. 23, 2022). The odor of 3M's mendacity was so pungent that the Chief Judge—like the MDL judge—could not "get [3M's] stink out" of the courtroom. *Id.* at 2270:21-2271:3. Even then, 3M's stench did not dissipate. Bellwether trials in the rearview, 3M's sanctionable antics continued with its "unilateral, eleventh hour cancellation of wave depositions." Dkt. 3341 at 1.

Against that disturbing backdrop, 3M now seeks interlocutory review of the most recent sanctions order based on false facts and absurd arguments. Obfuscating reality with innuendo, 3M claims it was "*plaintiffs* [who] did an about-face following nearly four years of litigation and argued for the first time that Aearo's role in this litigation is irrelevant." Pet. at 1 (emphasis added). Hogwash. 3M's alternate reality ignores its promise at the very start of this MDL that "no argument would be raised" as to "the nature of the Aearo acquisition." Dkt. 3610 at 10. Likewise, 3M's Master Answer did not deny that "3M is liable for [Aearo's] conduct." *Id.* at 11. Both binding representations eliminated any "burden" on Plaintiffs to litigate successor

liability, as 3M now anachronistically argues. *Cf.* Pet. at 4. 3M's *tu quoque* reveals no error, much less clear error, in the sanctions order.

Through another smokescreen, 3M blames the court for "fail[ing] to recognize that 3M has assumed financial responsibility for resolution of this matter pursuant to the uncapped Funding Agreement." Pet. at 4. "That fact alone," says 3M, "defeats any finding of bad faith." *Id. Au contraire*. The circular Funding Agreement, which obligates Aearo to indemnify 3M for all liabilities but allows Aearo to seek repayment from 3M for those same liabilities, reallocates 100% of the blame to Aearo. The bankruptcy, properly understood, also fails to preserve 3M's full financial liability, stripping Plaintiffs of their constitutional right to trial by jury. 3M has committed a woefully inadequate $1 billion to compensate over 250,000 soldiers, despite its lip service to an "uncapped" Funding Agreement. *See id.* If 3M's legal and financial liabilities truly were identical inside or outside of bankruptcy, as it now pretends, why did it try to stay the MDL after hatching Aearo's bankruptcy? 3M has much to gain in Aearo's bankruptcy and much to lose in this MDL.

Unable to show the court clearly erred in finding bad faith, 3M conjures up three "legal questions" that were never certified by the court. *See* Pet. at 11-12. Though none of them requires interlocutory review, let alone reversal, this Court should still review the sanctions order given its "broad import and impact" on all current and future cases. Dkt. 3568 at 3; Dkt. 3610 at 22. Accelerated affirmance of

4

the order will allow the MDL to move forward so thousands of veterans can hold 3M responsible for its "greed and design complacency," as 3M's internal documents concede. *See In re Aearo Techs. LLC*, No. 22-2890-JJG-11, Dkt. 336 at 40 (Bankr. S.D. Ind. Aug. 14, 2022) (quoting P-Gen-2219).[2]

## BACKGROUND

Unable to defend its defective earplug, 3M dodges "[t]he history of the CAEv2" and its "use by the United States military." Pet. at 6. Blaming the "word limit" instead of its misdeeds, 3M confines its narrative to only "essential events" preceding the sanctions order—the most recent one, that is. *Id.* But even 3M's retelling is riddled with ruses and half-truths. Maligning the MDL court in order to misdirect from its own mendacity, 3M refuses to come to grips with all the "essential events" of this historic proceeding.

Faithful to its statutory mandate, the court thoughtfully resolved all common questions in the MDL—besides 3M's newfangled wrong-party defenses, of course. *See* Dkt. 3610 at 18-19 (citing 28 U.S.C. § 1407). After a marathon of corporate, government, and expert discovery, accompanied by hundreds of dispositive and non-dispositive motions, the MDL court paced the parties through 16 bellwether trials, completing lap after lap of exhibit objections, deposition designations, motions in

---

[2] On April 11, 2014, after peddling the CAEv2 to the military for over a decade, 3M's Business Development Manager admitted, "We need a better mousetrap. I think our greed and design complacency have come home to roost."

limine, and post-trial motions. Very few jurists could have run this race, and even fewer would have the stamina to sustain the swift pace.

Throughout this marathon, 3M convinced its competitors and the court that it was the real defendant and that the Aearo subsidiaries, sitting on the sidelines, were defendants in name only. 3M sought "consolidated pretrial proceedings" from the beginning because Plaintiffs' claims "involv[ed] one or more common questions"— never mentioning that one of those common questions was whether 3M was liable for Aearo's misconduct. *See* 28 U.S.C. § 1407(a); Dkt. 3610 at 5 & n.3. To the contrary, 3M promised Plaintiffs at the Rule 26(f) conference that "no argument would be raised" about "who had responsibility for CAEv2-related liabilities." Dkt. 3361-1 at 2. And in response to Plaintiffs' allegation that "3M is liable for Aearo Defendants' conduct," 3M did not plead a denial or defense. Dkt. 3610 at 11. "To the extent a response [was] required," 3M "admit[ted] that the Aearo Defendants are [its] indirect, wholly-owned subsidiaries." *Id.*

3M continued to hold itself out as captain of the ship with exclusive liability for Plaintiffs' claims. Aearo, by contrast, "verified nothing, produced nothing, and sent no one." Dkt. 3610 at 12. In fact, 3M's corporate representative testified that he "didn't know there was an Aearo anymore." *Id.* at 12 n.17. Across 388 summary-judgment motions, 3M never once raised successor liability or otherwise pointed its finger at Aearo. *See id.* at 12-13. At all 16 bellwether trials, the jury apportioned

fault to "3M" only, without objection from 3M, even in cases involving solely Aearo's actions. *Id.* at 13. There were no post-trial motions about indemnity or apportionment, much less joint-and-several liability. Quite the opposite. 3M posted millions of dollars in supersedeas bonds on behalf of all defendants. *E.g.*, *Wilkerson*, Dkt. 217-1 at 1. 3M even touted defendants' unity to capitalize on a single-defendant cap on damages. Stridently opposing any "suggestion that [there] are six separate [defendants] for purposes of this litigation," 3M convinced the court that all defendants "share the same potential liability," substantially curtailing Plaintiffs' recovery. Dkt. 3610 at 14.

3M's petition says next to nothing about those "essential events." Pet. at 6. And it says even less about Aearo's bogus bankruptcy—a coup d'état calculated to overthrow the MDL. Facing mounting liability and waves of remand trials, 3M needed a way out, and a fast one at that. On the eve of Aearo's bankruptcy filing, 3M engineered a circular funding and indemnification agreement as an escape hatch, even though all defendants were solvent. *See In re Aearo*, Dkt. 11-2. Aearo would take the fall, filing for Chapter 11 bankruptcy and indemnifying 3M for all CAEv2 liabilities. *See* Dkt. 3328. The Fortune 500 company, on the other hand, would remain unblemished by the specter of financial ruin and legal responsibility. 3M would play the hero, the munificent benefactor with clean hands who would

7

willingly pay an allegedly "uncapped" amount to resolve radically devalued claims in the bankruptcy. *See* Dkt. 3610 at 8-9.

With the writing on the wall, one veteran moved to estop 3M from "attempting to avoid any portion of its liability based on the argument that [it] is the 'wrong party.'" Dkt. 3361 at 2. Exercising "restraint and discretion"—the exact opposite of 3M's unfounded accusation, Pet. at 3—the MDL court denied the motion because 3M had "not yet asserted . . . it is the 'wrong party' *in this litigation*." Dkt. 3386 at 7-10. From that moment forward, however, 3M was on notice of its "deeply concern[ing]" change of tune. Dkt. 3386 at 8; *e.g.*, Dkt. 3382 at 51:10-75:13.

The bankruptcy did not go according to 3M's plan, to say the least. *See* Dkt. 3329 at 1-2. It abruptly backfired when the bankruptcy court—not the MDL court— ruled that 3M could not stay the MDL via its scapegoat's bankruptcy. *See In re Aearo*, Dkt. 143. The jig was up. Given the bankruptcy court's refusal to extend the automatic stay to non-debtor 3M, it had to face the music in the MDL. *See id.*; Dkt. 3356 at 1.

Scrambling to find "a better mousetrap" than its broken bankruptcy scheme, *In re Aearo*, Dkt. 336 at 40 (quoting P-Gen-2219), 3M rushed to amend its case-specific answers to assert—for the first time ever—that it "did not directly assume any of [Aearo's] liability," *e.g.*, *George v. 3M*, No. 7:20-cv-71963, Dkt. 46 at 9 (N.D. Fla. Sept. 19, 2022); *see* Dkt. 3467 at 1. This was the crescendo of 3M's chicanery.

Prejudiced by 3M's radical reversal, Plaintiffs moved to "strike [3M's] amended claims and defenses." Dkt. 3506-1 at 18.[3] Expressly invoking the court's "inherent powers" to sanction 3M's "bad faith" based on several circuit cases, *id.* at 18-21, Plaintiffs' request was not "[i]n passing," as 3M wrongly states, Pet. at 7. Yet 3M's 35-page response said nary a word about sanctions. *See* Dkt. 3541 at 6-7.

Plaintiffs' reply brief confronted 3M with the same facts and cases, again asking the MDL court to invoke its inherent powers to sanction 3M. *See* Dkt. 3560 at 4-5, 9-10 & n.8-10. Once again, 3M turned its cheek to the charges against it, seeking a sur-reply to address two allegedly new arguments that had nothing to do with sanctions. Dkt. 3563 at 1-2 & n.2. The court denied 3M's irrelevant request, Dkt. 3564 at 1, but magnanimously "granted [3M] an opportunity" to address the relevant subject—sanctions—despite 3M's repeated forfeiture, *see* Dkt. 3571 at 1 (citing Dkts. 3386, 3506-1, 3560). *Cf.* Pet. at 8 (falsely stating that the MDL court "entered an extraordinary show-cause order demanding" 3M's response). Ironically, 3M wasted much of its supplemental response whining about space constraints, *see* Dkt. 3584 at 2-4, but never requested an enlarged brief, "oral argument, evidentiary hearing, or further proceedings of any kind," Pet. at 8; *see* N.D. Fla. L.R. 7.1(F), (K).

---

[3] Wave 1 Plaintiffs filed the motion, but they made clear "the same issues . . . apply to all" cases. Dkt. 3506-1 at 3 n.3. The court, too, put 3M on notice that "[a]lthough the briefing was filed in the context of the Wave 1 cases, it presents liability issues common to all cases." Dkt. 3568 at 2.

Due process duly satisfied, the MDL court canvassed the company's campaign of "[c]ontumacious conduct" and found it "clearly demonstrate[d]" bad faith. Dkt. 3610 at 1, 5-15.[4] The only sanction commensurate with 3M's "brazen abuse of the litigation process," which had all but closed the courthouse doors on 250,000 servicemembers, was to hold 3M to its long-standing representations. *Id.* at 10, 15-20. The court therefore precluded 3M from attempting to avoid any portion of its liability by shifting blame to Aearo. *Id.* at 21.

Because "nothing can go forward until 3M's ruse is run up the flagpole," the court stayed the MDL and "respectfully request[ed] the Eleventh Circuit to hear any appeal from this Order as soon as practicable." *Id.* at 16, 22.[5]

---

[4] 3M disputes the MDL court's finding of bad faith, but none of 3M's *ex-post* explanations denies its prior statements. *See* Pet. at 9-11. As one of many examples, 3M does not—and ultimately cannot—challenge its fatal admission that all "Defendants share the same potential liability." Dkt. 3610 at 14.

[5] The court's certification of the sanctions order is not antithetical to its refusal to certify the government-contractor order. *Cf.* Pet. at 2, 21-22. 3M's argument is the only head-scratcher here. Unlike the sanctions order, which disposes of 3M's wrong-party defenses in all MDL cases, 3M's government-contractor defense had "no impact on the vast majority of claims in this litigation." Dkt. 1329 at 11. 3M admits as much, conceding for the first time on appeal that its purportedly global preemption defense is only "potentially" (not wholly) "dispositive" of the MDL. Pet. at 6, 21.

## ARGUMENT

This Court should grant interlocutory review and affirm the MDL court's sanctions order. All agree the sanctions order eliminated one defense—however contrived—in the largest MDL in American history. *See* Pet. at 5; Dkt. 3610 at 21. All agree the sanctions order and resulting appeal "will significantly impact all cases in the MDL." Dkt. 3611 at 1; Pet. at 21-22. And all agree that prompt resolution of the sanctions order will materially advance the MDL, which is currently at a standstill because the court stayed the entire litigation pending appellate review of this issue. *See* Dkt. 3610 at 22; Pet. at 22. The sooner this Court reviews 3M's bad-faith conduct, the sooner Plaintiffs can prosecute their meritorious claims that have totaled over $300 million in verdicts to date. Interlocutory review will also save this Court from identical review of the sanctions order in the future. Expedited review and resolution will thus best serve the parties, the MDL court, and this Court.

Although that much is clear, none of 3M's misguided questions supports review or reversal. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) ("As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question."); 16 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 3929 (3d ed.) ("[T]he court of appeals may review the entire order, deciding . . . a question different than the questions

certified, or deciding despite the lack of any identified controlling question."). It is clear beyond cavil that the court did not abuse its discretion in sanctioning 3M here.

## I. There is no question the MDL court properly invoked its inherent powers without first exhausting estoppel or other state-law doctrines.

3M's first question stumbles out of the gate because it does not present any ground for difference of opinion, much less an abuse of discretion. *See* Pet. at 14-16. 3M muses that "[t]he court's inherent powers are generally reserved for unusual situations in which more explicit authorities," such as estoppel doctrines, "are not up to the task." Pet. at 14. But 3M cites nothing directly supporting its baseless position.[6] This dearth of authority proves, *ipso facto*, 3M has "failed to carry [its] burden of establishing . . . substantial ground for difference of opinion." *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2014).

Regardless, binding precedent dooms 3M's *ipse dixit*. 3M argues that estoppel doctrines must be exhausted, but the MDL court is "vested" with "inherent powers" to "fashion an appropriate sanction for conduct which abuses the judicial process," even if other mechanisms "exist which sanction the *same* conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 49 (1991) (emphasis added). Whereas estoppel

---

[6] 3M freely admits that *Grant* stands only for the proposition that an "'alter[ation in] defense strategy' is not itself bad faith." Pet. at 15 (quoting *Grant v. Regal Auto. Grp., Inc.*, 2020 WL 8224608, at *3 (M.D. Fla. Aug. 3, 2020)). 3M's other cases are even more vanilla. *Seymour* and *Ferguson* address the "purpose of judicial estoppel," while *Barton* notes inherent powers are rooted in "equity." Pet. at 15-16.

regulates "only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (quoting *Chambers*, 501 U.S. at 49).

Ignoring the precedent that answers its question, 3M trivializes its misconduct as a mere change in "strategic position." Pet. at 14-16. Hardly. "This simply is not a situation where a litigant made an offhand comment about potential liability once, twice, or even thrice." Dkt. 3610 at 19. Given the "full range" of 3M's "litigation abuses" chronicled by the court, estoppel and other state-law doctrines were no "substitute." *Id.* at 2-3 (citing *In re Mroz*, 65 F.3d at 1575). Because "nothing prevent[ed]" the court from wielding its inherent powers, *see, e.g.*, *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224 (11th Cir. 2017), 3M's first question cannot present any ground for difference of opinion.

## II.    There is no question the MDL court correctly sanctioned 3M in all cases without certifying a Rule 23 class.

3M's next question is fatally flawed for the same reason. *See* Pet. at 16-19. Notwithstanding Rule 23, the court was fully authorized to sanction 3M in all MDL cases. The sanctions order is a routine exercise of the court's inherent powers to "manage [its] own affairs" by regulating common misconduct, *Chambers*, 501 U.S. at 43, and its jurisdiction to adjudicate common defenses, *see* Dkt. 3610 at 18-19 (citing 28 U.S.C. § 1407). Anything short of omnibus adjudication would have jeopardized "the primary purposes of multidistrict litigation—the just, efficient, and

economical resolution of common questions of fact and law." *E.g.*, Dkt. 3558 at 9 n.10; *see also* Dkt. 3610 at 20.

3M disregards the seminal statute, which mandated the court to adjudicate "common questions" in this MDL. 28 U.S.C. § 1407(a); Dkt. 1. Instead of addressing that foundational authority or caselaw interpreting it, 3M bizarrely invokes Rule 23's purported "procedural protections." Pet. at 18. But 3M cites neither the rule's text nor a single decision requiring class certification in this context. *Cf. id.* The sole case 3M does cite says nothing whatsoever about sanctions, much less common defenses. *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-21 (5th Cir. 1997) (discussing bellwether trials and idiosyncratic specific-causation questions).

Nevertheless, 3M argues the sanctions order is "unprecedented and unjustified" because of the "varying postures of the thousands of actions impacted by this order." Pet. at 18. That is a red herring. Regardless of the varying postures of *Plaintiffs*' cases, the sanctions order prohibits *one* defendant in *one* MDL from asserting *one* common defense because of that *one* defendant's duplicity. *See* Dkt. 3610 at 19-22. Far from "sweeping," Pet. at 18, the sanctions order is carefully crafted and commensurate with 3M's fraud on the judiciary. 3M's unavailing attempt to invert the inquiry to focus only on Plaintiffs, rather than itself, is simply the latest in a long line of subterfuges to shirk responsibility.

14

To the extent 3M's question involves Plaintiffs at all, 3M's argument unravels with the pull of a single string. 3M speculates that "many" of the court's "reasons for imposing sanctions are wholly irrelevant and inapplicable in the overwhelming majority of [MDL] cases." Pet. at 17. But what of the MDL court's remaining reasons? Even Plaintiffs who have not yet "paid a filing fee," Pet. at 18, have been deeply prejudiced by 3M's misdeeds. Had 3M raised its wrong-party defenses at the outset, the entire MDL would have been organized differently, with "common discovery on successor liability, followed by summary judgment and/or bellwether trials." Dkt. 3610 at 17. Indeed, absent the sanction, all current and future Plaintiffs would have been forced to "litigate these issues on a piecemeal basis" because the time for global adjudication had long since passed. *Id.* at 17-18 & n.20. 3M's machinations have affected *everyone* by "delay[ing] the fair, efficient, and effective resolution" of this consolidated proceeding. *Id.* at 15-16.

Finally, 3M has the gall to close its backwards argument by accusing *the court* of "abus[ing] the MDL process." Pet. at 18. 3M's audacity is astounding. And its *ad hominem* attack is beyond inappropriate. But 3M's false accusation does reveal one thing: just how far this company will go to blame anyone but itself. *See id.*

## III. There is no question the MDL court provided 3M ample due process and applied the correct standard in finding bad faith.

3M's final question does not present serious grounds for review or reversal, either. *See* Pet. at 19-21. Its due-process arguments are, "quite frankly, astounding."

15

*See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1307 (11th Cir. 2006). Although 3M claims it had "only the narrowest opportunities to defend itself" from sanctions, Pet. at 19, 3M had ample opportunity: once in its 35-page opposition brief, which inexplicably failed to address Plaintiffs' request for sanctions, Dkt. 3541, and again after the court *sua sponte* gave 3M a second bite at the apple, Dkts. 3571, 3584.

Worse, 3M chides the court for supposedly stripping it of "a chance to defend itself at oral argument," Pet. at 19, even though it never requested oral argument, *see* N.D. Fla. L.R. 7.1(K), and the absence of argument does not violate due process, *see In re Mroz*, 65 F.3d at 1575-76. Further blind to its own hypocrisy, 3M chastises the court for "not receiving any evidence," despite its failure to request an "evidentiary hearing or further proceedings of any kind." Pet. at 8, 19. 3M's own caselaw proves the point. *See Grant*, 2020 WL 8224608, at *4 ("[A] court possesses discretion in deciding whether to conduct an evidentiary hearing on a motion for sanctions.") (citing *Baker v. Alderman*, 158 F.3d 516, 526 (11th Cir. 1998)); Pet. at 15. In short, 3M can blame only itself—not the MDL court—for its due-process complaints. No one could seriously conclude otherwise. *See McFarlin*, 381 F.3d at 1258 (citing *Burrell v. Bd. of Trs. of Ga. Mil. Coll.*, 970 F.2d 785, 788-89 (11th Cir. 1992)).

Nor could anyone conclude the court erred in "not giv[ing] 3M the benefit of any heightened standard of proof." Pet. at 19. In this Circuit, "[i]nvocation of a court's inherent power requires a finding of bad faith," period. *In re Mroz*, 65 F.3d

16

at 1575. "[N]o binding precedent" required the court to predicate its exposé of 3M's bad faith on "clear and convincing evidence." *See Zeltser v. Little Rest Twelve, Inc.*, 662 F. App'x 887, 889 (11th Cir. 2016). And 3M itself cites no such precedent, falling back on unreported district court cases to invent a question of "first impression." Pet. at 20.

Resolving 3M's third question would also not alter the outcome. Assuming, *arguendo*, clear-and-convincing evidence of bad faith were required—it is not—this Circuit's standard for sanctions already demands conduct "so egregious that it could *only* be committed in bad faith." *Purchasing Power*, 851 F.3d at 1224-25 (emphasis added). That is precisely what the MDL court found here. Despite 3M's misdirected quest for magic words, *see* Pet. at 20, it doesn't take a sleuth to discover that bad faith is the "only" take-away from 3M's "brazen abuse of the litigation process," Dkt. 3610 at 3-4, 10; *see also, e.g.*, *In re Sunshine*, 456 F.3d at 1306.

## CONCLUSION

Although none of 3M's questions requires review or reversal of the MDL court's well-reasoned sanctions order, Plaintiffs agree that interlocutory review will best serve the parties, the MDL court, and this Court. Accordingly, this Court should grant review of the sanctions order and affirm it.

17

Dated: January 12, 2023               Respectfully submitted,

                                      */s/ Michael A. Sacchet*
                                      Michael A. Sacchet
                                      Megan L. Odom
                                      CIRESI CONLIN LLP
                                      225 S. 6th St., Suite 4600
                                      Minneapolis, MN 55402
                                      mas@ciresiconlin.com
                                      mlo@ciresiconlin.com
                                      (612) 361-8220

                                      *Counsel for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because it contains 4,373 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This response also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared with Microsoft Word using proportionately spaced Times New Roman 14-point font.

Dated: January 12, 2023          */s/ Michael A. Sacchet*
                                 Michael A. Sacchet

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Dated: January 12, 2023                 */s/ Michael A. Sacchet*
                                        Michael A. Sacchet